ELLISON, SCHNEIDER & HARRIS L.L.P.
Peter J. Kiel (State Bar No. 221548)
Craig A. Carnes, Jr. (State Bar No. 238054)
2600 Capitol Avenue, Suite 400
Sacramento, California 95816
Telephone: (916) 447-2166
Facsimile: (916) 447-3512

Attorneys for Defendants

Domenico J. Carinalli, Jr. and Lynda L. Carinalli

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA RIVER WATCH,<br><br>                Plaintiff,<br><br>v.<br><br>DOMENICO J. CARINALLI, JR; LYNDA L. CARINALLI; DOES 1-10, Inclusive,<br><br>                Defendants. | CIVIL CASE NO. 3:14-cv-04431-JCS<br><br>**[PROPOSED] CONSENT DECREE AND ORDER** |

**I. RECITALS**

    a. Defendants Domenico J. Carinalli, Jr. and Lynda L. Carinalli (collectively, "Defendants") have an ownership interest in the real property located at 2900 Llano Road, Santa Rosa, California, which is associated with Sonoma County Assessor's Parcel Number 060-060-036 and is the subject of Plaintiff California River Watch's ("CRW") Complaint for Declaratory Relief, Injunctive Relief and Remediation filed on October 2, 2014 ("Complaint"). Defendants also have an ownership interest in contiguous real property associated with Sonoma County Assessor's Parcel Numbers 060-060-041, 060-060-042, 060-060-044 and 060-060-057, which along with parcel 060-060-036 are collectively referred to herein as "Property."

    b. CRW filed this action against Defendants pursuant to the citizen suit provision of the federal Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., codified at 16 U.S.C. § 1540(g)(1)(A), to enjoin Defendants from alleged ongoing violations of the ESA and alleged violations of regulations pertaining to the Sonoma California Tiger Salamander ("CTS"), a

species listed as endangered pursuant to ESA § 4.

    c.  Defendants dispute CRW's allegations and contend that they have not violated the ESA in any manner.  Defendants do not admit any of the substantive allegations contained in the Complaint, and neither Defendants' consent to entry of this Consent Decree nor any provision herein shall be construed as an admission of fact or liability for any purpose.

    d.  CRW and Defendants (collectively, "Parties") consent to the entry of this Consent Decree without trial of any issues, and without admission by Defendants of any alleged liability, violation or wrongdoing.  The Parties have chosen to resolve in full CRW's lawsuit and allegations as set forth in the Complaint, and hereby stipulate that, in order to settle the claims alleged against Defendants in the Complaint and to avoid the delay and expense of litigation, the Court should enter this Consent Decree.  In mutual consideration for the resolution of CRW's lawsuit, the Parties agree to the terms set forth herein. This Consent Decree constitutes a final judgment with respect to and a settlement of CRW's lawsuit and the disputed claims encompassed therein.

    NOW, THEREFORE, in consideration of this Consent Decree and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties intend to be legally bound and agree as set forth below.

**II. CONSENT DECREE**

    a.  <u>Jurisdiction</u>: The Court has jurisdiction over the subject matter of this action and the Parties pursuant to ESA § 11(g)(1)(A), 16 U.S.C. § 1540(g)(1)(A).  The basis for assignment of this case to the Northern District of California ("District"), pursuant to 16 U.S.C. § 1540(g)(3)(A), is that the alleged violations of the ESA asserted in the Complaint are purported to have taken place on property and land located within the District, and Defendants conduct business within this District.

    b.  <u>Effective Date</u>: The Effective Date of this Consent Decree shall be the last date on which the signature of a party to this Consent Decree is executed.

    c.  <u>Required Tasks</u>: Without admitting any fact, wrongdoing, or liability, Defendants shall undertake the tasks set forth below.  Notwithstanding any other provision herein, Defendants'

obligation to undertake the tasks shall only be in effect so long as CTS is listed as Threatened or Endangered under the ESA and so long as Defendants' compliance does not conflict with any encumbrance, restriction or limitation recorded against the Property and in effect as of the Effective Date, or does not conflict with any legal or regulatory mandate. Additionally, Defendants' obligation to undertake the tasks is limited to matters and actions within Defendants' power or control. Unless otherwise specified, the tasks set forth below are focused on and limited to the vineyard areas of the Property.

      i.    **Chemical Use**: Defendants shall refrain from applying any pesticide, herbicide, rodenticide or other chemical agents in the vineyards on the Property in a manner that would be harmful to CTS. To comply with and satisfy this restriction, Defendants shall follow the limitations, if any, in California Department of Pesticide Regulation's Endangered Species Custom Realtime Internet Bulletin Engine ("PRESCRIBE") as applied to the Property, except that between April 1 and October 31 Defendants may apply fungicides and organic-approved materials (e.g., Organic Materials Review Institute [OMRI] listed substances allowed for use in certified organic operations under the USDA National Organic Program) to the grapevines without regard to restrictions in PRESCRIBE, if any. Notwithstanding any other provision herein, restrictions on Defendants' chemical use shall not apply to any chemical application required by a regulatory agency or a legal or regulatory mandate. Defendants shall provide CRW with an annual, or more frequent if Defendants so choose, report of chemical use in the vineyards on the Property ("Chemical Report"). The Chemical Report shall include the following information: (a) chemical agent applied; (b) amount applied; (c) application location (i.e., which property); and (c) date of application.

      ii.    **Rodent Management**: Defendants shall not undertake any rodent management actions in the vineyards on the Property except in circumstances where Defendants deem it reasonably necessary to prevent harm to crops, vineyards or structures. If rodent management actions are deemed reasonably necessary, Defendants shall first attempt non-chemical means of control. If non-chemical means of control are unsuccessful, Defendants may use the pesticides/rodenticides (or generic equivalent) listed in **Exhibit A** attached hereto. If Defendants

desire to use a pesticide/rodenticide not identified in **Exhibit A**, Defendants shall notify CRW of the intended use at least fourteen (14) days prior to application, and CRW may provide Defendants with a recommended alternate pesticide/rodenticide. Defendants shall consider CRW's recommendation and negotiate this issue in good faith.

       iii.     **Crop Cover Management**: Defendants shall plant native cover crops between vineyard rows and other tilled areas bordering the vineyards on the Property. The native cover crops shall include seed mixes of some or all of the plant species listed in **Exhibit B** attached hereto ("Native Cover Crop"). Defendants shall undertake planting the Native Cover Crop by disking and seeding with the Native Cover Crop approximately one-third (1/3) of the vineyard rows on the Property per year for three successive calendar years starting in 2016 ("Initial Seeding"). Defendants may, but are not required to, disk and/or seed more than one-third of the vineyard rows annually as part of its crop cover management. If Defendants elect to re-seed the cover crop in vineyard rows after the Initial Seeding of all vineyard rows has been completed, Defendants shall use the Native Cover Crop seed except as provided below. If Defendants desire to use a plant species not identified in **Exhibit B,** or a non-native plant species that would compete with the Native Cover Crop, Defendants shall notify CRW of the intended use at least fourteen (14) days prior to application, and CRW may provide Defendants with a recommended alternate plant species. Defendants shall consider CRW's recommendation and negotiate this issue in good faith. Notwithstanding any prohibitions herein, Defendants may use a non-native plant species as part of its crop cover if it does not compete with the Native Cover Crop. For a period of 10 years starting in 2016, Defendants shall demonstrate compliance with the cover crop management requirements of this Consent Decree annually by providing CRW with date-stamped photographs of the Native Cover Crop around the Property when it submits the Chemical Report to CRW.

       iv.     **Disking and Tilling**: Defendants shall limit disking, tilling and other cultivation in the vineyards on the Property to a depth of twelve (12) inches unless done in accordance with the Impact Avoidance measures set forth in Section II(c)(vi). Deeper tilling will be required on a periodic basis when grapevine replants on the Property are necessary. Deeper tilling will be

restricted to the same locations where the previous grapevines were removed.

     v.    **Vernal Pool Maintenance**: To ensure that the existing vernal pools (seasonal ponds) on the parcel adjacent to the Property (Sonoma County Assessor's Parcel Number 060-060-057) with hydrologic conditions potentially suitable for CTS breeding (adequate size, depth and inundation period), as outlined in red and highlighted in yellow in **Exhibit C** attached hereto, are maintained as adequate CTS breeding habitat, Defendants shall continue (for a period of 10 years starting in 2016) to comply with the conditions of the bank enabling instrument for the Laguna Valley Mitigation Bank.  For a period of 10 years starting in 2016, Defendants shall annually provide CRW with date-stamped photographs of the vernal pools identified (outlined in red and highlighted in yellow) in **Exhibit C**.  The photographs shall be taken once annually between March and June and shall be of reasonably adequate quality to allow CRW to assess the hydrologic and vegetative health of the vernal pools at the time taken.  If CRW believes that the vernal pools are not being maintained as adequate CTS breeding habitat, CRW may provide Defendants with recommended management actions for the vernal pools. Defendants shall consider CRW's recommendations and negotiate this issue in good faith.   River Watch acknowledges that the depth of the water in the vernal pools will vary seasonally and annually due to changes in precipitation and air temperature.

     vi.    **Impact Avoidance**: Prior to any construction or future changes to the Property that involve ground disturbance deeper than twelve (12) inches below ground surface, excepting normal farming activities as allowed under this Consent Decree and minor repairs and maintenance to existing infrastructure, exclusion fencing (silt fence) will be installed to exclude CTS from entering the project area. Prior to the start of ground disturbance activities each morning that construction occurs, a biological monitor will check for CTS in the construction area, and under any equipment such as vehicles and stored pipes. Additionally, all open trenches, holes, etc. will be covered at the end of the day or escape ramps will be provided at each location to remove the potential for CTS becoming trapped in these features.

///

///

　　　d.　<u>Fees and Costs</u>: Defendants shall pay CRW the following amounts in full settlement of CRW's attorney's fees and costs:

　　　　　i.　$5,000 by December 31, 2015;

　　　　　ii.　$5,000 by June 30, 2016;

　　　　　iii.　$5,000 by December 31, 2016;

　　　　　iv.　$5,000 by June 30, 2017; and

　　　　　v.　$5,000 by December 31, 2017.

　Such payments will be made in the form of a check made payable to "California River Watch" and will be mailed to the Law Office of Jack Silver, P.O. Box 5469, Santa Rosa, CA 95402-5469.

　　　e.　<u>Dismissal of Lawsuit and Claims</u>:  Except to the extent the Court retains jurisdiction to enforce compliance of this Consent Decree, entry of this Consent Decree shall act as a dismissal with prejudice of CRW's lawsuit and all claims alleged against Defendants in the Complaint.

　　　f.　<u>Release and Covenant Not to Sue or Participate</u>:  In consideration for Defendants' agreement to perform the tasks described in Section II(c), CRW covenants not to sue for and does for itself and its respective legal successors and assigns, release and absolutely and forever discharge Defendants and their respective legal successors and assigns, of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, whether now known or unknown, suspected or unsuspected, asserted in the Complaint, that could have been asserted based upon Defendants' use of the Property, or which have arisen or may arise from the conduct underlying the allegations in the Complaint, including, without limitation: (a) any common law claims; and (b) any claims arising under municipal, local, state, or federal ordinances, statutes, or other laws including, but not limited to, Sections 7, 9, or 10 of the ESA, 16 U.S.C. § 1531 et seq., and any regulations promulgated pursuant to any municipal, local, federal and state ordinance, statute, or other law that may arise from the conduct underlying the allegations in the Complaint concerning the subject properties any time up to and including the Effective Date ("Released Matters").

CRW, including anyone acting on its behalf in a representative capacity, shall not participate, fund or otherwise assist any other person, entity or organization in taking action, legal or otherwise, against Defendants relating to the Released Matters.

In furtherance of the intentions set forth herein, CRW acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THEDEBTOR.

CRW waives and relinquishes any right or benefit which it has or may have under Section 1542 of the Civil Code of the State of California or any similar provision of the statutory or nonstatutory law of any other jurisdiction to the full extent that it may lawfully waive all such rights and benefits pertaining to the subject matter of this Consent Decree. In connection with such waiver and relinquishment, CRW acknowledges that it is aware that his or her attorneys or accountants may hereafter discover claims or facts in addition to or different from those which he or she now knows or believes to exist with respect to the subject matter of this Consent Decree or the other party thereto, but that it is its intention hereby fully, finally and forever to settle and release all of the Released Matters, disputes and differences known or unknown, suspected or unsuspected, which now exist, may exist or heretofore have existed between and among CRW and Defendants, except as otherwise expressly stated herein.

 g. <u>Dispute Resolution</u>:  Any disputes between the Parties concerning any alleged breach of this Consent Decree, except for Defendants' failure to make timely payments under Section II(d), shall be subject to the dispute resolution procedures set forth below.  If Defendants fail to make timely payments under Section II(d), CRW may seek immediate relief with the Court pursuant to subsection II(g)(ii) below.

 i. The Parties covenant and agree that, if either party believes the other is in violation of one or more terms of the Consent Decree, the party shall provide written notice to the other specifying the actions or inactions it deems to be in violation of this Consent Decree.

1  Within thirty (30) days of receipt of such notice, the party receiving the notice shall respond to
2  the notice in writing.  If the Parties still dispute compliance with this Consent Decree, within an
3  additional thirty (30) days, the Parties shall meet and confer in a good faith attempt to resolve
4  their dispute.

5         ii.     If the Parties cannot informally resolve the dispute pursuant to the procedures set
6  forth immediately above, either party may seek relief through a claim or motion filed with the
7  appropriate judge in the U.S. District Court for the Northern District of California, which will
8  retain jurisdiction over this Consent Decree. In the event that either party files a claim or motion
9  to enforce its rights under this Consent Decree, the relief the reviewing court is empowered to
10 award is limited to injunctive relief to take the relevant action(s) specified in this Consent
11 Decree, and each party shall bear its own attorney's fees and costs incurred in such a proceeding.

12     h. <u>Notice</u>: Except as otherwise expressly stated herein, all reports, pictures, notices,
13 consents, approvals, requests, demands and other communications (collectively, "Notice") which
14 the Parties are required or desire to serve upon or deliver to the other part shall be in writing and
15 shall be given by nationally-recognized overnight courier, by certified United States mail, return
16 receipt requested, postage prepaid, addressed as set forth below, or by electronic mail addressed
17 as set forth below:

    If to CRW:            Edward E. Yates, Esquire
                          Law Office of Edward E. Yates
                          1000 Fourth Street, Suite 800
                          San Rafael, CA 94901
                          Tel: (415) 526-6143
                          Email: eyates@marinlandlaw.com

    If to Defendants:     Lynda L. Carinalli
                          4905 Gravenstein Hwy S
                          Sebastopol, CA 95472
                          Tel. (707) 795-7052
                          Email: lovemoo@comcast.net

    Copy to:              Craig A. Carnes, Jr.
                          Ellison, Schneider & Harris LLP
                          2600 Capitol Ave., Suite 400
                          Sacramento, CA 95816
                          Tel. (916) 447-2166

Email: cac@eslawfirm.com

The foregoing addresses may be changed by Notice given in accordance with this Section. Any Notice sent by certified mail shall be deemed received on the date shown in the proof of delivery. Any Notice sent by electronic mail shall be deemed received upon electronic transmission thereof provided that the sender does not receive electronic notice of non-delivery. Any Notice sent by overnight courier service shall be deemed received on the day of actual delivery as shown by the confirmation of delivery by the messenger or courier service. If the date of receipt of any Notice to be given hereunder falls on a weekend or legal holiday, then such date of receipt shall automatically be deemed extended to the next business day immediately following such weekend or holiday for purposes of calculating time periods commencing upon the date of service.

   i.   Attorney's Fees and Costs: Except as set forth in Section II(d) above, each party shall bear its own past and future costs and attorneys' fees relating to the subject matter of this Consent Decree.

   j.   Parties' Acknowledgment of Terms. The Parties and their respective counsel have carefully and fully read and reviewed this Consent Decree. The Parties hereby represent that the contents of this Consent Decree are understood and agree that this Consent Decree is binding on each party or its respective predecessors, successors, and assigns and as described herein. This Consent Decree is entered into voluntarily, free of undue influence, coercion, duress, menace, or fraud of any kind. Neither party, nor any officer, agent, employee, representative, or attorney of or for either party, has made any statement or representation to the other party regarding any fact relied upon in entering this Consent Decree, and no party to this Consent Decree is relying upon any statement, representation, or promise of the other, nor of any officer, agent, employee, representative, or attorney of or for either party, in executing this Consent Decree or in making the settlement provided herein, except as expressly stated in this Consent Decree.

   k.   Interpretation and Applicable Law. This Consent Decree shall be construed and interpreted in accordance with the laws of the United States and the State of California without regard to principles of conflicts of law. This Consent Decree shall be interpreted and construed

as a whole, according to its fair meaning and not strictly for or against any party, and without regard to which party drafted the Consent Decree. All of the promises, representations, and warranties contained in this Consent Decree survive its execution.

  l.  <u>Counterparts</u>.  This Consent Decree may be executed in multiple counterparts, each of which shall evidence one and the same document.

  m.  <u>Entire Consent Decree In Writing</u>. This Consent Decree constitutes the entire agreement between the Parties hereto with respect to the subject matter set forth herein and supersedes all previous or contemporaneous negotiations, commitments (oral or written), and writings with respect to the subject matter set forth herein.

  n.  <u>Modification or Amendment</u>. This Consent Decree, including any exhibits hereto, may be modified or amended only by a written document executed by the Parties.

  o.  <u>Severability</u>. The invalidity or unenforceability of any provision of this Consent Decree shall in no way affect the validity or enforceability of any other provision. If, in any action before any court or other tribunal of competent jurisdiction, any term, restriction, covenant, or promise is held to be unenforceable for any reason, then such term, restriction, covenant, or promise shall be deemed modified to the extent necessary to make it enforceable by such court or other tribunal and, if it cannot be so modified, that this Consent Decree shall be deemed amended to delete such provision or portion adjudicated to be invalid or unenforceable, and the remainder of this Consent Decree shall be deemed to be in full force and effect as so modified. Any such modification or amendment in any event shall apply only with respect to the operation of this Consent Decree in the particular jurisdiction in which such adjudication is made.

  p.  <u>Parties Bound By This Consent Decree.</u> This Consent Decree, and each of its provisions, including all representations, warranties, and promises contained herein, binds, and inures to the benefit of the Parties, and each of their respective officers, directors, members, employees, contractors, heirs, assigns, present and future affiliates, parents, subsidiaries, predecessors and successors in interest whether by merger, consolidation, or otherwise, as well as their respective representatives, agents, and administrators, past, present, and future.

///

q. <u>No Third Party Beneficiaries</u>. This Consent Decree is not intended to confer any rights or obligations on any third party or parties, and no third party or parties shall have any right of action under this Consent Decree for any cause whatsoever.

r. <u>Authority</u>. Each of the persons signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

s. <u>Final Judgment</u>. Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the matters addressed herein.

IN WITNESS WHEREOF, the undersigned have caused this Consent Decree to be executed by their duly authorized representatives.

DATED: Sept. 22, 2015

CALIFORNIA RIVER WATCH

By: _____
Larry J. Hanson
Board President

DATED: _____, 2015

DOMENICO J. CARINALLI, JR.

By: _____

DATED: _____, 2015

LYNDA L. CARINALLI

By: _____

q. No Third Party Beneficiaries. This Consent Decree is not intended to confer any rights or obligations on any third party or parties, and no third party or parties shall have any right of action under this Consent Decree for any cause whatsoever.

r. Authority. Each of the persons signing this Consent Decree on behalf of an entity represents and warrants that he or she has actual authority and capacity to execute this Consent Decree on behalf of the entity and to bind it to all of the terms of this Consent Decree.

s. Final Judgment. Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the matters addressed herein.

IN WITNESS WHEREOF, the undersigned have caused this Consent Decree to be executed by their duly authorized representatives.

DATED: _____, 2015        CALIFORNIA RIVER WATCH

                               By: _____
                                   Larry J. Hanson
                                   Board President

DATED: 9-21, 2015              DOMENICO J. CARINALLI, JR.

                               By: [signature]

DATED: 9-21, 2015              LYNDA L. CARINALLI

                               By: [signature]

1  The Court having considered the representations of the Parties, NOW THEREFORE,
2 before taking any testimony, and without any adjudication of any fact or law, hereby enters the
3 Consent Decree.  The Court retains jurisdiction to enforce the Consent Decree for a period of
4 five (5) years from the date hereof.  This five (5) year period may be extended by the Court upon
5 a showing of good cause.
6 IT IS SO ORDERED.
7  Dated and entered this <u>23rd</u> day of <u>   September   </u>, 2015.

<u>/s/ Joseph C. Spero            </u>
JOSEPH C. SPERO
UNITED STATES MAGISTRATE JUDGE

# Exhibit A

**List of pesticides/rodenticides that may be used where reasonably necessary to prevent harm to crops, vineyards or structures if non-chemical means of control are unsuccessful**

1. Warfarin
2. Diphacinone
3. Chlorophacinone

{00320092;1}

# Exhibit B

## Native Cover Crop

1. Blue wildrye (Elymus glaucus)

2. Blue dicks (Dichelostemma capitatum)

3. Brodiaea spp. (terrestrial species)

4. Purple needlegrass (Stipa pulchra)

5. Lupines (Lupinus nanus or L. bicolor)

6. Native tarweeds (Madia sativa, Hemizonia congesta)

7. Claytonia perfoliata (Miner's lettuce)

8. Epilobium brachycarpum (Willow-herb; note – needs at least 1 early summer mowing; tall otherwise)

9. Deinandra corymbosa (another annual tarweed; needs 1 early summer mowing)

10. Madia elegans (another annual tarweed; needs 1 early summer mowing)

11. Clarkia purpurea (Purple clarkia)

12. Clarkia amoena (Clarkia)

13. California Brome (Bromus carinatus)

{00320093;1}

# Exhibit C

